UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SOUTH KINGSTOWN SCHOOL COMMITTEE, ) ) ) | |
| Plaintiff ) ) | C.A. No. 13-127ML |
| Vs. ) ) | |
| JOANNA S. as Parent of PJ S., ) ) ) | |
| Defendant ) ) ) | |

## STATEMENT OF UNDISPUTED FACTS

1. The student's date of birth is June 28, 1999, and he has been diagnosed by Bradley School with an anxiety disorder; disruptive behavior disorder; and Parent-child relational problem. (Parent's exhibit 10-7).[1]

2. In February of 2012,[2] the Parent filed a Special Education Request for Impartial Due Process hearing against the South Kingstown School Department. (District's exhibit 1).[3]

3. In that request, the Parent requested a comprehensive achievement evaluation, a comprehensive cognitive evaluation, an independent comprehensive assistive

---

[1] Parent's exhibits refer to the exhibits that were introduced by the Parent in the due process hearing filed by the South Kingstown School Department on October 30, 2012.
[2] The Parents filed for a due process hearing in February of 2012. That due process hearing was settled. The due process hearing that is the basis for this appeal was filed by the District in October 2012.
[3] District's exhibits refer to the exhibits that were introduced by the South Kingstown School Department in the due process hearing filed by the South Kingstown School Department on October 30, 2012.

technology evaluation, an independent speech and language evaluation, an independent occupational therapy evaluation, an independent reading evaluation, an independent math evaluation and an independent educational program evaluation. (District's exhibit 1, page 6).

4. That due process request was settled through a Settlement Agreement in April, 2012. (District's exhibit 2).

5. In said Settlement Agreement the parties agreed to cooperate in order for the District to complete educational, cognitive, speech and language and occupation therapy evaluations for the Wolf School. (District's exhibit 2, page 2).

6. In said Settlement Agreement the District was no longer obliged to conduct a neuropsychological evaluation of the student. (District's exhibit 2, page 2).

7. Said Settlement Agreement constituted the entire agreement between the parties. (District's exhibit 2, page 2).

8. As a result of said Settlement Agreement the Student was placed at the Wolf School and the Student currently attends the Wolf School.

9. On October 22, 2012, the Parent requested the same evaluations that she had requested in her due process request of February 2012 that had been settled as part of the Settlement Agreement of April, 2012 (District's exhibit 3).

10. On December 5, 2012, the District submitted a Motion to Request that Relief Sought be Granted, i.e. that the Parent's request for further evaluations be denied citing an April 12, 2012 Settlement Agreement for a previous Due Process Hearing brought by the Parent, claiming the issue of evaluations had previously been addressed and settled. The hearing officer denied the motion.

(See Hearing Officer's Decision page 9).

11. When asked why she requested an independent achievement evaluation, the Parent testified that she wants an achievement test that tests his education level. (Transcript, volume 1, page 35).

12. The Parent requested an independent psychological evaluation to show the psychological functioning of her son which she further states means how her son reacts and how he behaves and where his state of mind is. (Transcript, volume 1, page 38).

13. The Parent requested an independent speech and language evaluation and she does not know what information she is looking for until she has the new independent evaluation because she does not believe the ones in April were complete. (Transcript, volume 1, page 41).

14. The Parent requested an independent occupational evaluation to look at his fine motor skills, his handwriting, his stress, and the pressure, everything else which will indicate his difficulties in writing. (Transcript, volume 1, page 44).

15. Margot Izzi is an occupational therapist licensed by the State who evaluated the student in April of 2012. (Transcript, volume 1, page 122).

16. In Ms. Izzi's professional opinion, the student did not place as much effort toward paper and pencil tasks, but with the other tests that involved object manipulation, small objects and a ball he seemed to put forth more effort. (Transcript, volume 1, page 125).

17. Ms. Izzi testified that the handwriting evaluation done by the Wolf School would fill in the gap of the handwriting issue that South Kingstown had with its

evaluation. (Transcript, volume 1, page 136).

18. Ms. Izzi did not give the Parent questionnaire because by the student's age the evaluator is looking at the kids and how they are functioning **in the educational setting** (Transcript, volume 1, page 150).

19. Typically a school occupational therapist does not give a Parent profile to a middle school child. (Transcript, volume 1, page 150).

20. Molly Flynn is a speech and language pathologist working in the South Kingstown School System who is licensed and certified in the state of Rhode Island. Ms. Flynn evaluated the Student. (Transcript, volume II, page 4).

21. Ms. Flynn was made aware of the Student's anxiety issues and played a game to relieve his anxiety. (Transcript, volume II, page 4).

22. After the games, the Student calmed down, engaged in conversation, had great eye contact and joked around. (Transcript, volume II, page 6).

23. Ms. Flynn administered the TOLD-I because it covered a lot or areas. (Transcript, volume II, page 6).

24. After she administered the TOLD-I, she administered two parts of the CELF because one part of the TOLD-I was below the average range and she wanted to do further testing to make sure that the low area was okay. (Transcript, volume II, page 6).

25. The CELF showed that his scores and abilities were in the average range. (Transcript, volume II, page 7).

26. Kate Priel is and has been a special education teacher in the South Kingstown School System for thirteen (13) years. She is certified by the State of Rhode

Island as a special education and, in that role, she is licensed to evaluate students. (Transcript, volume II, page 24)

27. Ms. Priel attended a meeting when the Parent expressed her concerns. (Transcript, volume II, page 25).

28. Ms. Priel evaluated the Student in April of 2012.  She was aware of the Student's issues.  She was able to complete the first subtest on reading comprehension and a math subtest. (Transcript, volume II, page 31).

29. Ms. Priel was unable to complete any additional testing with the Student. (Transcript, volume II, page 33).

30. Ms. Priel did not feel the need to do additional testing because previously the reading teacher had done Fountas and Pinnell which is a running record that looks at reading accuracy, reading fluency and reading comprehension and the Student had done NWEA which is a curriculum-based testing that measures reading and math. (Transcript, volume II, page 35).

31. In Ms. Priel's professional opinion there was enough testing available that there was no need to continue with the educational evaluation, (Transcript, volume II, page 35).

32. Dr. Susan Casey Torrey is certified by the State of Rhode Island as a school psychologist.  She has been a school psychologist in South Kingstown for 23 years. (Transcript, volume II, page 63)

33. In her opinion, the measure that was utilized in the psychological evaluation appears to give an accurate measure of the Student's cognitive abilities, despite some of the challenges during the testing. (Transcript, volume II, page 63).

34. In Dr Torrey's opinion, a new psychological evaluation should not be administered:

   > "Because the measure indicates it is was a valid representation of his cognitive abilities, and he has average cognitive abilities, if not higher, and there is not a whole lot of differences between his cognitive abilities, so it is all within an average range with the relative strengths and relative weaknesses, so I don't see a need, especially for a youngster who experiences so much difficulty in those situations." (Transcript, volume II, page 64).

35. Ms. Teresa Eagan is the Director of Pupil Personnel for the South Kingstown School Department. (Transcript, volume II, page 86).

36. Ms Eagan testified that there are two reasons to evaluate a child. One is when you are looking at eligibility and then you evaluate if there are any concerns of the programming for the student. (Transcript, volume II, page 86).

37. Ms. Eagan testified that the Parent had input into the IEP that was developed at the meeting on October 9, 2012. The Wolf School staff went step by step through the IEP and made changes due to her concerns. (Transcript, volume II, page 87).

38. Ms. Eagan received a request for independent evaluations on October 22, 2012. (Transcript, volume II, page 90).

39. Ms. Eagan testified that a team meeting was held in February 2012 to discuss the Parent's concerns. At that meeting, although evaluations were not necessary, the team agreed to do evaluations because they were worried about the Student not being in school. (Transcript, volume II, page 92).

40. Ms. Eagan testified that the Parent requested a due process hearing and there was a settlement agreement and as part of the settlement agreement the four

evaluations were done for the purpose of providing the Wolf School with a baseline data.(Transcript, volume II, page 92),

In the Settlement agreement under 2E it states:

> "The claimant shall immediately cooperate with the district in order for the district to complete the following evaluations of "Student", educational, cognitive, speech and language, and occupational therapy. The claimant understands and agrees that "Student" cannot begin at the Wolf School until said evaluations are completed, unless the Wolf School agrees otherwise." (Claimants document #2).

41. Ms. Eagan sent the evaluations to the Wolf School and also contacted the Wolf School because the educational evaluation was not a complete evaluation. The Wolf School told Ms. Eagan that they did not need additional evaluations. (Transcript, volume II, page 96).

42. An IEP meeting was held at the Wolf School on October 9, 2012. Typically the Wolf School likes to take 45 days to do some benchmark testing before they develop an IEP. (Transcript, volume II, Page 97).

43. In developing the IEP, the Wolf School used some of the data gathered from the evaluations completed by the district as well as additional evaluations that they conducted on their own. (Transcript, volume II, page 98).

44. The Wolf School gave the Student the AIMSweb for fluency, the grade level M assessment that evaluated reading, vocabulary, comprehension and a total composite score, AIMSweb benchmark for math computations and well as for concepts and applications and some functional (math) skill drills as well as the McGraw-Hill Math Connects Program. (Transcript volume II, page 99-100).

45. In the area of occupational therapy, the Wolf School used the evaluation from

South Kingstown as well as information conducted by their therapist. (Transcript, volume II, page 100).

46. In the area of speech and language, the Wolf School used the evaluation from South Kingstown. (Transcript, volume II, page 101).

47. Ms. Eagan has refused further testing of the student because:

> "Testing is meant to set up the student's program. PJ is in a program. The Wolf School feels as though they have all of the assessments they needed at this point in time to create his program. It would not, in my professional opinion, with a student with high anxiety, to put him under a microscope and put him in that situations would cause really undue stress, where the real way you can understand and see a child is in the natural setting with curriculum-based measures." (Transcript, volume II, page 102).

48. Ms. Eagan would be willing to do more evaluations if the Wolf School felt there was a need for additional data or information or if he began to not attend school again. (Transcript, volume II, page 103).

49. Cheryl Johnson is the Director of Special Education at the Wolf School. (Transcript, volume III, page 4).

50. Ms. Johnson received an OT, speech and language, educational, and psychological evaluation from South Kingstown and she received a copy of the IEP. (Transcript, volume III, page 11).

51. The Wolf School uses a process of a 45-day diagnostic placement so that the students who come to the Wolf School are appropriate and the students are looked at to determine that level of student need. (Transcript, volume III, page 14).

52. Ms Johnson testified that during the 45-day placement, the Wolf School will

conduct any types of assessment it needs to determine whether the placement is appropriate. The Wolf School will obtain baseline data to determine where the child is academically. (Transcript, volume III, page 29).

53. Ms. Johnson stated that:

> "the modifications and supports for the "Student" were gleaned from the reports presented to us from South Kingstown, so that would include your speech and language, your OT, your educational, and any other evaluations. And also based on teacher's observations of him during that 20-day period prior to the development of the IEP, or prior to the IEP meeting." (Transcript, volume III, page 23).

54. No staff member at the Wolf School has come to Ms. Johnson and stated that they need more testing for the student. (Transcript, volume III, page 32).

55. Karen Seal is the math-science teacher at the Wolf School and has the student in her class. (Transcript, volume III, page 37).

56. Ms. Seal conducted the math screening that was indicated in petitioner's exhibit. (Transcript, volume III, page 38).

57. To write the goals and objectives in the Student's IEP, Ms Seal used the assessments that she conducted and also the activities that she does in the classroom every year with new students at the beginning of the year. (Transcript, volume III, page 40).

58. According to Ms. Seal, at the present time, there is no need for additional testing in the area of math in order for her to meet the student's needs. (Transcript, volume III, page 41).

59. Maureen Gagne is the literacy teacher at the Wolf School. She teaches reading, writing, and social studies. (Transcript, volume III, page 52).

60. Ms. Gagne conducted the language arts assessments that are listed in petitioner's Exhibit 11. (Transcript, volume III, page 53).

61. Ms. Gagne drafted the strength and needs and goals and objectives in the Student's IEP that relate to language arts. (Transcript, volume III, page 55).

62. At the present time, Ms. Gagne would not recommend that any further evaluations be done of the student in the area of written language or reading or any other area that comes under her area of expertise. (Transcript, volume III, page 57).

63. Anissa Khouri is the speech and language pathologist at the Wolf School. (Transcript, volume III, page 78).

64. Ms. Khouri was involved in the drafting of the student's IEP. To draft the IEP she used the CELF -4 screening test and a portion of the CELF-4 written narrative. She also reviewed the speech and language evaluation from South Kingstown. (Transcript, volume III, page 80-81).

65. Based on the evaluation from South Kingstown and the additional evaluations that Ms. Khouri conducted, she did not see a need for the student to have direct speech and language services in his IEP. (Transcript, volume III, page 81).

66. At the present time, Ms. Khouri does not feel that the student needs any further evaluations in the area of speech and language. (Transcript, volume III, page 84).

67. Andrea Horgan is the occupational therapist at the Wolf School. (Transcript, volume IV, page 3).

68. Ms. Horgan conducted the ETCH evaluation which looks at handwriting and the

comps which is the observation of motor and postural skills. (Transcript, volume IV, page 5).

69. Based on the South Kingstown evaluation and her further assessments, Ms. Horgan found that he needed some services in the area of occupational therapy. (Transcript, volume IV, page 8).

70. Ms. Horgan feels she has the information that she needs to write his goals and she is conducting ongoing observations and working with the student on ongoing basis so she has enough information and that he does not need further OT evaluation at this time. (Transcript, volume IV, page 9).

71. Rosaline Granoff is the Director of Admissions at the Wolf School and she supervises the speech and language pathologists. She has held that position since 1999. (Transcript, volume IV, page 22).

72. During a student's 45-day placement at the Wolf School, the team does evaluations, formally and informally, and the child is observed in the classroom and this helps provide the school with enough information to write an IEP. (Transcript, volume IV, page 25).

73. In Ms. Granoff's professional opinion, no additional information is needed for the Student. (Transcript, volume IV, page 26).

74. Dr. Steven Imber is a professor of Special Education at Rhode Island College and in private practice. (Transcript, volume IV, page 54).

75. Dr. Imber did not speak to anyone at the Wolf School, did not speak to anyone in

South Kingstown and has no firsthand knowledge as to how the student is doing.

(Transcript, volume IV, page 98).

          Respectfully submitted,

          SOUTH KINGSTOWN SCHOOL DEPARTMENT
          By its attorney,


          */s/ Mary Ann Carroll*
          Mary Ann Carroll, Esq.
          Brennan, Recupero, Cascione, Scungio & McAllister, LLP
          362 Broadway
          Providence, RI 02909
          Ph: 453-2300   Fax: 453-2345

May 15, 2013

## CERTIFICATION

This is to certify that a copy of the foregoing Plaintiff's "Statement of Undisputed Facts" was filed electronically to the following counsel of record on this 15th day of May, 2013. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Gregory A. Mancini, Esq.
Sinapi Law Associates, Ltd.
100 Midway Place, Suite 13
Cranston, RI 02920
gmancinilaw@gmail.com

Christine H. Barrington, Esq.
ACCESS! Education Consulting
94 Park Terrace Avenue
West Haven, CT 06516
Chbarrington@gmail.com

          /s /Mary Ann Carroll